JUDGE CEDARBAUM          08 CV 2747

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JALAAL MOHAMMEDI, SAARAH MOHAMEDI,
OMAR MOHAMEDI AND RONA  MOHAMMEDI,

                        Plaintiffs,

        v.

ROYAL AIR MAROC LTD,

                        Defendant.

-------------------------------------------------------------------X

Verified Complaint

INDEX NO.

Jury Trial Demanded

RECEIVED
MAR 14 2008
U.S.D.C. S.D. N.Y.
CASHIERS

      By and through undersigned counsel, Plaintiffs Jalaal Mohammedi, Saarah

Mohammedi, Omar Mohammedi and Rona Mohammedi bring this civil action to remedy

injuries caused by Defendant's tortuous conduct.

## PARTIES

      1.      Plaintiff Jalaal Mohammedi is 12 years old.  He currently resides at 14

Collamore Terrace West Orange, NJ. 07052.

      2.      Plaintiff Saarah Mohammedi is Jalaal's sister.  She is 10 years old.  She

currently resides at 14 Collamore Terrace West Orange, NJ. 07052.

      3.      Omar Mohammedi is the father of Jalaal and Saarah.  He currently resides

at 14 Collamore Terrace West Orange, NJ. 07052.

      4.      Rona Mohammedi is the mother of Jalaal and Saarah.  She currently

resides at 14 Collamore Terrace West Orange, NJ. 07052.

      5.      Royal Air Maroc Ltd is a Moroccan business corporation.  It is a

registered corporation in New York State.  Its New York office is located at 55 E. 59th St.

Suite 17B, New York, NY 10022.

## Jurisdiction

6.      This Court has diversity jurisdiction over this matter pursuant to 28 USC 1332.

7.   Venue is proper pursuant to 28 USC 1391(a)(1).

## Preliminary Statement

8.      On or about April 2007, Plaintiffs Omar and Amina entered into a contract with Royal Air Maroc Ltd. to transport their children, Jalaal and Saarah, and the children's luggage from John F. Kennedy International Airport in New York, New York to Oran, Algeria with a connecting flight in Casablanca, Morocco.

9.      Plaintiffs Omar and Amina secured the purchase of this ticket with a credit card.

10.     On June 21, 2007 Plaintiffs Jalaal, age 12, and Saarah, age 10, boarded a RAM flight as unaccompanied minors.

11.     RAM assumed the responsibility to safely take these minors from New York, NY to Oran Algeria through Casablanca, Morocco.

12.     Upon information and belief, the flight was fraught with delay.

13.     Upon information and belief, RAM failed to meet its duty of care to the minors during these delays.

14.     During transit, RAM unilaterally changed the minors' final destination from Oran Algeria to Algiers, Algeria.

15.     RAM changed this itinerary without the knowledge or consent of Saarah and Jalaal's parents.

16.     RAM delivered the children's luggage at the destination city ten days late.

## Facts

17.    On June 21, 2007 Plaintiffs Jalaal, age 12, and Saarah, age 10, flew on a RAM flight from JFK to Casablanca enroute to Oran,  Algeria.

18.    The flight from JFK to Casablanca was delayed for three hours.

19.    As a result of these lengthy delays, Jalaal and Saarah arrived in Casablanca at or about 10:30 am Casablanca time, which was later than their scheduled connecting flight to Oran, Algeria.

20.    As a result, the minor Plaintiffs missed their connecting flight to Oran..

21.    Upon disembarking the flight in Casablanca, Morocco and walking to RAM's ticket counter, Jalaal called his parents in the United States and informed them that they were still in Casablanca and that the children did not know what was going to happen to them.

22.    The RAM employee accompanying Jalaal and Saarah told the children's father, Omar Mohammedi, that she was putting them on another flight to Oran.

23.    Omar Mohammedi asked on which flight his children would travel.

24.    The RAM employee replied that she did not know.

25.    When the father asked how she could take them to another flight when she did not know which flight they were taking, the employee hung up on him.

26.    The father called his children and asked to speak to the RAM employee again but she refused to pick up the phone or reassure him that his children would be safe in Casablanca.

27.    The father called RAM in New York and requested that someone let him know about his children's situation but he could not get any answer.

28.    For or about an hour the father attempted to reach RAM in Casablanca but could not connect with anyone who was aware of his children's situation.

29.    On or about 3:00 pm Casablanca time, a RAM official called the father from his son's cellular phone and told him that RAM had a problem.

30.    RAM told the father that there was no flight to Algeria that day.

31.    At that time the RAM employee informed the father that they would be working on booking his children on a flight the following day and would inform him as soon as they have the itinerary.

32.    They also mentioned that the children would be taken to a local hotel and that they would be rebooked on a flight to Oran, Algeria the following day.

33.    At this point, Jalaal and Saarah had been kept at the airport for about 4 hours and 30 minutes.

34.    The children sent various text messages and made various phone calls to the parents to express their anxiety and fear for not knowing how they were going to leave Casablanca.

35.    The parents were fearful for their children's safety as they were in a foreign country without their parents and RAM was not taking care of them.

36.    The children repeatedly expressed to their parents that they were exhausted and needed to rest.

37.    The airport was very crowded and the children could not find a place to sit in the airport.

38.    For about an hour and half the father kept calling RAM in Casablanca.

39.    Finally, he reached Ticket Agent Masri who assured him that he had issued tickets for the children to fly an Air Aigle Azur flight to Oran, Algeria through Toulouse, France on June 23.

40.    Masri assured the Father that the Air Aigle Azur flight was confirmed.

41.    At that time, the father asked Mr. Masri why his children were still at the airport.

42.    The children had spent six hours in the airport with no accommodation.

43.    Mr. Masri promised that someone was taking the children to the hotel to rest at once.

44.    Upon information and belief, Jalaal and Saarah were the only passengers whom had not yet been taken to the hotel.

45.    Upon information and belief, the other passengers were escorted to the hotel following their arrival on or about 10:30 am local time.

46.    Upon information and belief, RAM employees took advantage of Jalaal and Saarah's age and treated them worse than other passengers because they were children and could not protest.

47.    Two hours after Mr. Masri had assured the father that his children would be transported to a hotel, Jalaal sent a text message to his father to let him know that they were still in the airport and that their itinerary had changed.

48.    Jalaal told his father that he was about to faint from stress and exhaustion, and his sister Saarah was very scared and exhausted.

49.    The father called Mr. Masri and inquired why the children were still in the airport over 8 hours after their flight had landed.

50.    At that point, Mr. Masri informed Omar Mohammedi that the children's itinerary had changed.

51.    The father expressed his disappointment and distress because RAM was abusing his children by not taking them to a place to rest.

52.    Omar Mohammedi also expressed his astonishment that changes were made to the children's ticket without informing the parents.

53.    Mr. Masri replied that the children should have been in the hotel by then.

54.    Mr. Masri also stated that the children were booked on a flight going to Algiers.

55.    When the father mentioned that the destination was Oran and not Algiers, Mr. Masri stated that they could not find a flight to Oran.

56.    Upon information and belief, Algiers is about 230 miles away from Oran.

57.    Upon information and belief, RAM revoked the previous booking to save money.

58.    Masri stated they would not rebook a ticket to Oran, Algeria.

59.    He added that the children would be arriving to Algiers and someone would have to pick them up from there.

60.    RAM made these changes without informing or consulting with Jalaal and Saarah's parents and was sending the minor plaintiffs to a destination other than the one they bought their ticket for.

61.    Furthermore, at this point, the young children had waited three hours on a RAM airplane on a runway in JFK, had endured the 7 hour trip across the Atlantic and

were then kept at the Casablanca Airport for 8 hours while other passengers were taken to the hotel upon their arrival to Casablanca. .

62.    As a result, the children were exhausted and scared and the parents were extremely distressed at the treatment of their children by RAM.

63.    Mr. Masri told the father that he would call him within 15 minutes with updates.

64.    Twenty minutes passed and the father had to call Mr. Masri again.

65.    Mr. Masri refused to speak with him.

66.    The father made over five phone calls to Mr. Masri who still refused to speak with him.

67.    The parents frantically spoke to everyone they knew to secure the arrival of their children to Oran.

68.    They called Air Algerie in Algeria and the agency in New York to book the ticket from Algiers to Oran.

69.    It was the parents who finally got the confirmation for the flight from Algiers to Oran.

70.    At that time the children were still at the Casablanca Airport, exhausted, scared and distressed.

71.    The parents were extremely scared for the safety of their children.

72.    The parents could not go to work or do anything except spend time on the phone with Morocco and Algeria.

73.    The parents attempted to fly to Casablanca to be with their children but could not secure a seat.

74.    Every time they called their children they realized the egregious acts exhibited by RAM.

75.    The parents felt hopeless since they were 3,000 miles away from their children.

76.    It was not until after 8:00 pm that the children were taken to the hotel. They had spent 10 hours at the airport.

77.    On June 23, 2007, the children arrived in Algiers on or about 11:30 am.

78.    When the children arrived in Algiers they called their parents.

79.    A family friend from Air Algerie spoke to the father and assured him that the children were secure and he was taking them to the connecting flight booked by the parents.

80.    The parents assumed the responsibility to fly them to Oran.

81.    The parents arranged for friends to accompany the children at the Algiers Airport.

82.    On June 23, 2007 on or about 4:30 pm the minor plaintiffs arrived in Oran where the parents' family was waiting for them.

83.    Upon information and belief, if it was not for the cellular phone which the parents gave to the children to travel with, the parents could not have arranged for the safe arrival of their children to Oran.

84.    When the children arrived in Oran nearly three days after they began their journey, their luggage was missing.

85.    Upon information and belief, it is RAM's intentional and repeated practice not to send the luggage with the passengers from Casablanca to Oran.

86.     Upon information and belief, as a result of this practice passengers have to travel to the Airport more than 100 miles away to pickup their luggage.

87.     Upon information and belief, as a result of RAM's practice, passengers receive their luggage piecemeal which requires several trips to the Airport.

88.     Upon information and belief, it is RAM's practice not to inform passengers if their delayed language has arrived.

89.     The passengers have to go to the Airport every time a RAM flight at Oran arrives, which is usually every three days.

90.     In the case at bar, the children's family had to travel to the Airport over 100 miles three times to get their luggage.

91.     The children did not receive their luggage until June 30 over 10 days later.

92.     RAM made no effort to keep the parents of unaccompanied minors abreast of their changing itineraries or take the responsibility to secure a safe arrival for the unaccompanied minors to their final destination.

93.     Almost every communication with RAM during this ordeal was initiated by Jalaal or the father via their personal cell phones.

94.     The father, an attorney, spent the entire day tracking down RAM employees.

95.     He spent the second day assuring the safety of his children through continuous communication with friends and Air Algerie officials.

96.     As a result, he lost an entire day's earning.

97.     Jalaal and Saarah remain fearful of flying because of their experience with RAM.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

98.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 97 of this complaint as if incorporated and retained herein.

99.     On or about April 2007, Plaintiffs entered into a contract with RAM to transport Jalaal and Saarah and their luggage from New York, NY to Oran Algeria on June 21, 2007.

100.    After significant delay, RAM transported Jalaal and Saarah from New York, NY to Algiers, Algeria.

101.    RAM breached the contract by failing to secure passage for Jalaal and Saarah to Oran, Algeria.

102.    RAM breached its contract by transporting the children to another destination other than the destination indicated by the contract.

103.    The contract required RAM to supervise, care for and accompany Jalaal and Saarah as unaccompanied minors New York to Oran.

104.    RAM breached the contract when it left the children in an airport for over 10 hours without accommodation.

105.    RAM breached its contract when Plaintiffs' luggage was significantly delayed and did not arrive until June 30, 2007.

106.    As a result of this breach, plaintiffs suffered economic damage.

107.    Plaintiff Omar Mohammedi spent significant time and resources in finding an alternate route for his children and tracking down their luggage.

## SECOND CAUSE OF ACTON
## INTENTIONAL INFLICTION OF EMTIONAL DISTRESS

108.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 107 of this complaint as if incorporated and retained herein.

109.    Defendant's wrongful acts complained of herein were extreme and outrageous and done with the intent to cause Plaintiffs severe emotional distress.

110.    Defendant's repeatedly refused to speak with worried parents and refused to resolve the children's travel problems despite having knowledge of the children's minor status and the emotional distress the situation caused.

111.    As a consequence, Plaintiffs suffered physical injury, emotional distress and/or were subjected to great fear.  They suffered from anxiety and to this day, Jalaal and Saarah are fearful of flying.

## THIRD CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

112.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 111 of this complaint with the same force and effect as though fully set forth herein.

113.    Defendant had a duty as a common carrier.

114.    Defendant assumed a higher standard of care for unaccompanied minors.

115.    Defendant acted recklessly and negligently.

116.    As a consequence, Plaintiffs suffered physical pain and impairment and/or mental and emotional distress.

## FOURTH CAUSE OF ACTION
## PRIMA FACIE TORT

117.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 116 of this complaint as if incorporated and retained herein.

118.    Defendant's wrongful acts complained of herein were reckless and/or intentional.

119.    Defendant's conduct complained of herein was unjustified and contrary to law, in that Defendant took advantage of Jalaal and Saarah's age when they failed to provide Jalaal and Saarah with accommodations during their ordeal.

120.    Defendant also intentionally or recklessly refused to consult or communicate with the parents.

121.    Defendant's conduct complained of herein was unjustified and contrary to law, in that Defendant intentionally and recklessly refused to transport children to their destination.

122.    As a consequence, Plaintiffs suffered physical injury, emotional distress and/or were subjected to great fear.  They suffered from anxiety and to this day, Jalaal and Saarah are fearful of flying.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE

123.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 122 of this complaint with the same force and effect as though fully set forth herein.

124.    Defendant had a duty as a common carrier.

125.    Defendant assumed the duty to care for unaccompanied minors.

126.    Defendant had a duty to transport Jalaal and Saarah and their luggage from New York, NY to Oran, Algeria.

127.    Defendant had a duty to care for their physical and emotional health while Defendant transported them.

128.    Defendant breached this duty by failing to rebook them and failing to provide accommodations for Jalaal and Saarah.

129.    Defendant breached this duty by failing to timely delivery Jalaal and Saarah's luggage.

130.    Such breach proximately caused Jalaal and Saarah to experience fear, anxiety and worry.

131.    As a consequence, Plaintiffs suffered physical injury, emotional distress and/or were subjected to great fear.  They suffered from anxiety and to this day, Jalaal and Saarah are fearful of flying.

### SIXTH CAUSE OF ACTION
### WARSAW CONVENTION ART. 19

132.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 131 of this complaint with the same force and effect as though fully set forth herein.

133.    Defendant's actions caused Plaintiffs' luggage to be delayed.

134.    Such conduct is in violation of the Warsaw convention with respect to the transportation of baggage.

135.    Plaintiffs expended much time and money in retrieving the delayed baggage and in being without their luggage for 10 days in a foreign country.

136.    As a result, Plaintiffs incurred monetary damage.

## DAMAGES

WHEREFORE, Plaintiffs demand judgment in their favor:

a)  On the first cause of action in excess of $300,000 together with costs of this action and attorney's fees;

b)  On the second cause of action in excess of $300,000 together with costs of this action and attorney's fees;

c)  On the third cause of action in excess of $300,000 together with costs of this action and attorney's fees;

d)  On the fourth cause of action in excess of $300,000 together with costs of this action and attorney's fees;

e)  On the fifth cause of action in excess of $300,000 together with costs of this action and attorney's fees; and

f)  On the sixth cause of action in excess of $300,000 together with costs of this action and attorney's fees.

New York, NY
March 7, 2008

Angela Migally (AFM 9637)
Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 801
New York, New York 10016
Telephone:     (212) 725-3846
Facsimile:     (212) 202-7621

UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
-----------------------------------------------------------------X
JALAAL MOHAMMEDI, SAARAH
MOHAMEDI, OMAR MOHAMEDI AND RONA
MOHAMMEDI,

                    Plaintiffs,

             v.                                    VERIFICATION

ROYAL AIR MAROC LTD,

                    Defendant.
-----------------------------------------------------------------X


STATE OF NEW YORK        )

COUNTY OF NEW YORK   )              : S.S.:

         OMAR MOHAMMEDI, being duly sworn, deposes and says:

         I am a plaintiff in the within action; I have read the foregoing Complaint and

know the contents thereof; that the same is true to my own knowledge, except as to the

matters therein stated to be alleged on information and belief, and as to those matters, I

believe them to be true.

                                        _____
                                              OMAR MOHAMMEDI

Sworn to before me this
13th Day of March, 2008

_____
NOTARY PUBLIC

HEIDI J. MEYERS
NOTARY PUBLIC, State of New York
No. 02ME5047448
Qualified in Kings County
Commission Expires August 7, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
-------------------------------------------------------------X
JALAAL MOHAMMEDI, SAARAH
MOHAMEDI, OMAR MOHAMEDI AND RONA
MOHAMMEDI,

                              Plaintiffs,

             v.                                        VERIFICATION

ROYAL AIR MOROC LTD,

                              Defendant.
-------------------------------------------------------------X


STATE OF NEW YORK        )

COUNTY NEW YORK          )              : S.S.:

        RONA MOHAMMEDI, being duly sworn, deposes and says:

        I am a plaintiff in the within action; I have read the foregoing Complaint and

know the contents thereof; that the same is true to my own knowledge, except as to the

matters therein stated to be alleged on information and belief, and as to those matters, I

believe them to be true.

                                              RONA MOHAMMEDI


Sworn to before me this
|| th Day of March, 2008


NOTARY PUBLIC

NORBERT STOLARZEWICZ
Notary Public, State of New York
Qualified in Suffolk County
No. 01ST6128313
My Commission Expires June 6, 2009